USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/12/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                                   :
MINERVA MACK,                                    :

                                              Plaintiff,     :                            1:16-cv-7138-GHW

                                    -v -                          :                      MEMORANDUM OPINION
                                                                  :                           AND ORDER
VERIZON COMMUNICATIONS INC.,    :

                                             Defendant.   :

------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

       In 2013, when *pro se* plaintiff Minerva Mack turned 65 years old she expected to begin receiving pension benefits from her former employer, the New York Telephone Company ("NYTC"), a predecessor of defendant Verizon Communications Inc. ("Verizon"). No payments arrived. Upon inquiry, Ms. Mack learned that Verizon, now the sponsor of NYTC's pension plan (the "Plan"), did not consider her eligible to receive benefits. After two unsuccessful attempts to secure a pension from Verizon, Ms. Mack filed this action under the Employee Retirement Income Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Because Verizon's determination that Ms. Mack is not entitled to pension benefits was not arbitrary and capricious, however, Defendant's motion for summary judgment is GRANTED.

## I.     BACKGROUND[1]

Ms. Mack was born in February 1948 and maintains that she began working at NYTC on April 29, 1967 and continued until she was terminated by NYTC in April 1979. Pl.'s Local Rule 56.1 Statement (ECF No. 33), ¶¶ 2, 3 ("Pl.'s 56.1").[2]

Pursuant to the terms of the Plan in effect when Ms. Mack was terminated, NYTC employees eligible to participate in the Plan were those who had (i) reached the age of 25; and (ii) been employed by NYTC for at least one year.[3] Def.'s 56.1, ¶ 3; Schoenecker Aff. Ex. 1 (the "Plan"), § 4(1)(e). Ms. Mack satisfied both of those conditions when she was terminated. Being a participant in the Plan does not permit an employee to obtain benefits, however—the terms of the Plan require satisfaction of additional requirements to receive pension benefits.

In 1979 the Plan provided, in relevant part, that eligible participants could receive deferred vested pension benefits ("DVPB")—payments made "upon [the eligible participant's] sixty-fifth birthday"— if, and only if, she "has served ten or more calendar years during the period beginning with . . . age twenty-two, and ending on the last day of the month in which the sixty-fifth birthday occurs." Plan § 4(1)(b); *see also id.* § 8.1 ("no employee or annuitant shall have any right to a service or deferred vested pension unless he meets the conditions satisfied in Paragraph 1(a) or 1(b) of Section 4 of these Regulations").

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and related submissions, and are undisputed or taken in the light most favorable to Plaintiff, unless otherwise noted.

[2] As Defendant notes in its memorandum of law, the proper defendant for an ERISA claim arising under section 502 (a)(1)(B) is the Plan itself, not the Plan's sponsor or administrator. *See, e.g., Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). Defendant has not raised this issue by motion. *See* Def.'s Mem. of Law (ECF No. 28), at 1 n.1. The Court's analysis below applies equally to the Plan as it does to the sponsor, Verizon, however. As a result, and as Defendant suggests, the fact that the *pro se* plaintiff named the wrong defendant does not affect the Court's analysis or conclusion here.

[3] When Ms. Mack was terminated by NYTC, the Plan was called the "Plan for Employees' Pension, Disability Benefits and Death Benefits." Aff. of Marc A. Schoenecker (ECF No. 26) ¶ 4 & Ex. 1. The Plan is now known as the "Verizon Pension Plan for New York and New England Associates." Def.'s Local Rule 56.1 Statement (ECF No. 27), ¶ 1 ("Def.'s 56.1).

On April 12, 2013, shortly after her sixty-fifth birthday, Ms. Mack submitted a claim for pension benefits to the Verizon Claims Review Unit (the "Review Unit"). Def.'s 56.1, ¶ 7; Schoenecker Aff., Ex. 2. In a one-and-a-half-page letter dated September 12, 2013 (the "2013 Letter"), and signed by Maureen Finnerty-Toleson of the Review Unit, Ms. Mack was informed that her claim was denied. Schoenecker Aff. Ex. 3. According to the 2013 Letter, the Review Unit had "considered the information provided in [Ms. Mack's] Claim Initiation Form dated April 12, 2013, Verizon's records, and the terms of the Plan." *Id.* at 1. The Verizon records had indicated that Ms. Mack's "[s]ervice date for purposes of determining eligibility for a deferred vested benefit is April 23, 1971" and that the "[t]ermination of employment occurred in 1979." *Id.* The 2013 Letter then quoted at length from Section 4.1(b) of the Plan, which sets forth the ten-year service requirement for receiving DVPB, and concluded that "[s]ince you did not complete 10 years of service, you did not meet the requirements for a deferred vested benefit." *Id.*

The second page of the 2013 Letter sets forth the procedure for appealing the decision to the Verizon Claims Review Committee (the "Review Committee"). *Id.* at 2. The Plan confers discretion on the Review Committee to make final benefits determinations. *See* Plan §§ 3.2(e) ("The Committee, . . . shall grant or deny claims for benefits under the plan"); 3.4 ("The Employees' Benefit Committee, or the Review Committee when it reviews a denial of a claim, shall determine conclusively for all parties all questions arising in the administration of the Plan"); 8.3(a) ("In all questions relating to age and service for eligibility to become a participant or eligibility for a deferred vested pension . . . the decision of the Committee, based upon these Regulations and upon the records of the Company, and insofar as permitted by applicable law, shall be final").

The parties dispute whether Ms. Mack appealed the 2013 decision. According to Ms. Mack, she properly appealed, but there is no evidence in the record of that appeal. Pl.'s 56.1 ¶ 5. It also appears that at some point in 2015, Ms. Mack asked the U.S. Department of Labor to investigate

3

whether she was entitled to Verizon pension benefits. *See, e.g.*, Schoenecker Aff., Ex. 5 at 1. In any event, on October 17, 2015, Ms. Mack submitted a second benefits request to the Review Unit, this time inquiring why she was not entitled to benefits under the collective bargaining agreement. Schoenecker Aff., Ex. 4 ("According to the CWA only 5 years of service is needed to be eligible."). In her claim initiation form, Ms. Mack writes that she has "9 ½ years svc. with Verizon 1970-1979." *Id.* at 2. In a letter dated January 12, 2016 (the "2016 Letter"), again signed by Ms. Finnerty-Toleson, Ms. Mack was informed that her second claim for benefits was denied. Schoenecker Aff., Ex. 5. The Review Unit's reasoning is set forth in the letter, as follows:

> In your claim, you indicate that the collective bargaining agreement requires five years of service in order to earn a vested pension. The Plan was amended to require five years of service (excluding service prior to age 18) to earn a vested pension effective *for participants who terminate employment on or after January 1, 1987*. Since you terminated employment in 1979, the terms of the Plan in effect at the time of your employment determine benefit eligibility. As indicated to you in the claim denial letter you previously received, the terms of the Plan in effect at your termination of employment required that participants complete 10 years of service excluding periods prior to age 22. Since you did not meet this requirement, you are not entitled to a pension under the Plan.

*Id.* (emphasis added). The Review Unit further noted that "the US Department of Labor made inquiries on your behalf regarding your entitlement to benefits. The response to that request is enclosed for your reference which includes the prior claim denial letter." *Id.*

On September 9, 2016, Ms. Mack commenced this case, asserting claims under Section 502(a)(1)(b) of ERISA. ECF No. 2. In or about March 2017, Verizon agreed to review Ms. Mack's claim for pension benefits a third time—this time the review would be conducted by the appellate body, the Review Committee. Def.'s 56.1 ¶ 15. Ms. Mack was permitted to—and did—submit additional materials to the Review Committee in advance of its review.

In a five-page letter dated April 19, 2017 (the "2017 Letter"), the Review Committee reported that it considered Ms. Mack's request at its April 3, 2017 meeting. Schoenecker Aff., Ex. 6.

4

Having considered "the information provided in [Ms. Mack's] requests including the material [she] submitted dated March 21, 2017, Verizon's records, and the terms of the Plan," in addition to the pleadings in this lawsuit, the 2013 Letter, and the 2016 Letter, the Review Committee upheld the Review Unit's decision to deny benefits. *Id.* at 1.

The 2017 Letter explains the concept of vesting benefits within the meaning of ERISA, and how those meanings have changed over time. Schoenecker Aff., Ex. 6 at 2. The Review Committee concludes:

> I believe you are of the mind that you should be subject to newer rules with shorter and more favorable vesting requirements that became effective after you terminated employment . . . The law and Plan terms on vesting when you terminated employment in 1979 were longer and less favorable to participants, and you did not have the requisite vesting service under those rules to be "vested" in your Plan benefit.

*Id.* The 2017 Letter then provides a detailed review of Ms. Mack's employment history. Verizon records show that Ms. Mack had worked at NYTC from October 19, 1970 through February 13, 1979.[4] *Id.* The Review Committee acknowledged that Ms. Mack had submitted paperwork when she was hired indicating that she had worked for additional time periods in 1967, 1968, and 1970. *Id.* Although those periods "could not be confirmed through the official company records," the Review Committee granted "an additional four months, 22 days of credit," covering the additional time periods Ms. Mack claimed to have worked prior to October 1970. *Id.* at 2-3. The 2017 Letter sets forth Section 4.1(b) and explains, "[y]ou reached age 22 in 1970; therefore, any period of employment prior to January 1, 1970 is not recognized under the Plan for vesting purposes." *Id.* at

---

[4] The Review Committee used an end date of February 13, 1979 to calculate Ms. Mack's service because that is the date reflected in Verizon's records. Even taking the facts most favorable to Plaintiff and calculating the time using Ms. Mack's asserted end date of April 30, 1979—a fact which is treated as "undisputed" by Verizon for purposes of this motion—the Plan's service requirement is not met. As a result, the Review Committee's conclusion applies equally to the analysis incorporating Ms. Mack's asserted end date.

5

3. It then sets forth the entirety of Paragraph 7 of Section 2, and relevant provisions of Paragraph 8 of Section 2 and 3(c) of Section 8 of the Plan. *Id.* at 3-4.

> Paragraph 7 of Section 2 of the Plan provides, in relevant part:
>
> The expression "year of service" for determining Pension Plan participation and eligibility for a deferred vested pension, shall mean a computation period in which an employee completes 1000 hours of service. Effective January 1, 1978, for the purpose of determining 1000 hours of service, an employee will be deemed to have completed 45 hours of service in each week in which he completes one or more hours of service.

*Id.* Paragraph 8 of Section 2 describes in more detail the computation of an "hour of service" under the U.S. Department of Labor Rules and Regulations for Minimum Standards for Employee Pension Benefits Plans. *Id.* at 3-4. Finally, Paragraph 3(c) of Section 8 of the Plan provides that the "computation period for determining eligibility for a deferred vested pension . . . is the calendar year." *Id.* at 4. In other words, "a year of service for vesting purposes is a calendar year in which an employee is considered to have completed 1,000 hours. Hours are granted on the basis of 45 hours per week for each week of employment or part thereof." *Id.* at 4. Therefore, the Review Committee concludes:

> You are considered to have completed a year of service for each of the calendar years 1971 through 1978 for a total of eight years. You are not considered to have completed a year of service in 1979 since your termination date was February 13, 1979 and you were considered to have completed 315 hours (7 weeks x 45 hours). You are not considered to have completed a year of service for 1970 since your date of hire was October 19, 1970 and you were considered to have completed 495 hours of service (11 weeks x 45 hours).

*Id.* Furthermore, the Review Committee noted that, "[i]f the Committee grants a year of service for 1970, you would be considered to have completed nine years of service for each of the years 1970 through 1978, and again would not be entitled" to DVPB under the Plan. *Id.*

Finally, the Review Committee addressed the changes to vesting requirements that went into effect in the 1980s, and concluded that "[s]ince you terminated employment in 1979, these changes did not apply to your employment." *Id.* at 5.

The 2017 Letter concludes by informing Ms. Mack that she can obtain any of the documents, records, or other information relevant to the Review Committee's decision free of charge, and provides contact information for individuals who could answer her questions. *Id.*

Verizon moved for summary judgment in this case on July 17, 2017. ECF No. 28.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (internal quotes and emphasis omitted)(quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323-24). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-

movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* (quoting *Anderson*, 477 U.S. at 252).

Because she is proceeding *pro se*, the Court must liberally construe Ms. Mack's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .") (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

### B. Arbitrary and Capricious Standard

"[A] denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

8

construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan provides the administrator with discretionary authority, the benefits decision is reviewed for abuse of discretion. *Id.* at 111; *Pepe v. Newspaper & Mail Deliverers'-Publishers' Pension Fund*, 559 F.3d 140, 146 (2d Cir. 2009) ("Since the terms of the Plan grant the [administrator] discretionary authority to interpret the Plan, the standard governing the district court's review . . . is the arbitrary-and-capricious standard."); *Kruk v. Metro. Life Ins. Co.*, No. 3:07-cv-1533 (CSH), 2009 WL 1481543, at *2 n.1 (D. Conn. May 26, 2009) ("The term 'arbitrary and capricious' is used interchangeably with the phrase 'abuse of discretion,' and either describes the deferential standard applied when an ERISA plan reserves discretion for the administrator." (citations omitted)). "The grant of discretionary authority thus narrows the range of judicial oversight and shields a plan administrator's decision from a more searching and broader *de novo* review." *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 487 (2d Cir. 2006). The Court is "not free to substitute [its] own judgment for that of the [plan administrator] as if [it] were considering the issue of eligibility anew." *Hobson v. Metro Life Ins. Co.*, 574 F.3d 75, 83-84 (2d Cir. 2009) (internal quotation marks and citations omitted).

A decision to deny benefits is arbitrary and capricious if is it "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (quoting *Pagan v. Nynex Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). "[W]here the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *McCauley v. First Unum Life Ins. Co.,* 551 F.3d 126, 133 (2d Cir. 2008) (quoting *Pulvers v. First UNUM Life Ins. Co.,* 210 F.3d 89, 93 (2d Cir. 2000)).

Whether the decision is reviewed *de novo* or deferentially, the district court's review is typically limited to the evidence that the plan administrator itself considered, *i.e.*, the administrative

record. *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66-67 (2d Cir. 1997) (*de novo* review); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) (deferential review).

## III.     DISCUSSION

The Plan delegates authority to the Review Committee to make determinations regarding benefits. As a result, the Review Committee's decision to deny Ms. Mack's benefits must be affirmed unless it was arbitrary and capricious. The decision of the Review Committee was not arbitrary and capricious. As a result, Verizon's motion for summary judgment must be granted.

As discussed above, the Review Committee's decision was based on Ms. Mack's failure to satisfy the Plan's requirement that she complete ten years of service following her twenty-second birthday. Indeed, the facts when viewed in the light most favorable to Ms. Mack support the decision of the Review Committee that she worked for less than ten years after age 22. Although Ms. Mack argues that she did satisfy the requirement, even taking the facts in her favor the Review Committee concluded that she did not accrue a sufficient number of years of service. Their reasoning and calculations were set forth in the 2017 Letter and are supported by substantial evidence in the record. *See* Schoenecker Aff., Exs. 3, 5, 6 (describing bases for decisions).

The parties do not dispute that Ms. Mack turned 22 in February 1970. Def.'s Reply at 2; Pl.'s Opp. at 3. It is also undisputed that Ms. Mack's employment at NYTC terminated "on or about the end of April 1979." Pl.'s Opp. at 3; Def.'s Reply at 2 (it is "undisputed that Ms. Mack's employment . . . terminated <u>no later than</u> April 30, 1979") (emphasis in original).

The Review Committee considered the terms of the Plan that were in effect during the relevant time period, which state on their face that Plan participants must accrue 10 years of service excluding periods of service prior to age 22 to be eligible for DVPB.[5] The Review Committee's

---

[5] The Court notes that Ms. Mack argues that she is entitled to the benefit of amendments to the relevant pension law that went into effect in 1987—nearly eight years after Ms. Mack was terminated by NYTC—which allowed pension plans to disregard service only prior to reaching the age of 18. Unfortunately for Ms. Mack, these amendments are not

10

interpretation of the Plan is clearly supported by its text and will not be disturbed by the Court. "In a situation '[w]here both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.'" *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir. 1983)).

The Review Committee considered the number of hours Ms. Mack worked in 1979, and found that it does not amount to a full calendar year of work. According to Ms. Mack, she worked for "roughly 20 weeks" in 1979. Pl.'s 56.1 ¶ 3. Taking the evidence in the light most favorable to Ms. Mack, she would have been credited for 900 hours of service for 20 weeks in 1979—100 less than the 1000-hour requirement to amount to a "year of service" under the Plan. The Court is not persuaded by Ms. Mack's argument that the amount of wages she received in 1979 demonstrates that she actually worked more hours because those wages include severance pay and payouts for unused vacation time. The Review Committee had a reasonable basis to conclude that the wage statements do not demonstrate that Ms. Mack worked more than 900 hours in 1979.

Because the Court finds that the Review Committee had a rational basis for its decision denying Ms. Mack benefits, Verizon's motion for summary judgment is GRANTED.

The Court requests that counsel for Defendant provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

---

applicable because they were not in effect at the time her employment with NYTC ended. The Plan administrators' determination that those amendments are not applicable was therefore not arbitrary and capricious.

The Clerk of Court is directed to mail a copy of this order to Plaintiff. The Clerk of Court is further directed to enter judgment in favor of Verizon, terminate all pending motions and deadlines, and close the case.

SO ORDERED.

Dated: December 12, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge